UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| James Hackett, | ) | Civil Action No.  5:22-0861-KDW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| Kilolo Kijakazi, Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the court reverses and remands the Commissioner's decision for the reasons discussed herein.

I.      Relevant Background

A.      Procedural History

On May 21, 2020[1] Plaintiff protectively filed applications for DIB and SSI alleging he became disabled on May 3, 2020. Tr. 208-13. Plaintiff's applications were denied initially on September 18, 2020, Tr. 64-65, and on reconsideration on July 13, 2021, Tr. 124-25. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 146-47. ALJ J. Petri conducted an administrative hearing on December 2, 2021, taking testimony from Plaintiff and

---

[1] Although the Application Summary is dated May 28, 2020, Tr. 208,  the Disability Determination Transmittals indicate a filing date of May 21, 2020. Tr. 64-65.

Vocational Expert ("VE") Mary Cornelius. Tr. 29-49. The ALJ denied Plaintiff's claim for DIB

and SSI in a decision dated December 30, 2021. Tr. 12-24. On January 18, 2022, Plaintiff requested

review of this decision by the Appeals Council. Tr. 207. After granting Plaintiff additional time to

submit more information, Tr. 7-8, on February 25, 2022 the Appeals Council sent Plaintiff a

"Notice of Appeals Council Action" indicating it had denied Plaintiff's request for review of the

ALJ's December 2021 decision, Tr. 1-5. Plaintiff brought this action seeking judicial review of

the Commissioner's decision in a Complaint filed on March 15, 2022. ECF No. 1.

   B.    Plaintiff's Background

     Born in December 1975, Plaintiff was 44 years old on his alleged onset date of May 3,

2020. Tr. 240. In his May 28, 2020 form Disability Report-Adult Plaintiff indicated that he was

5'10" tall and weighed 235 pounds. Tr. 244. Plaintiff indicated that the highest grade of school he

completed was the 11th grade, he did not attend special education classes, and he did not complete

any type of specialized job training, trade or vocational school. Tr. 245. Plaintiff indicated he

stopped working on February 1, 2020 because he got suspended and "decided not to return to work

after [his] suspension time period was over." Tr. 244. He indicated that even though he stopped

working for other reasons he became unable to work on May 3, 2020 because of a gunshot wound

to his left leg. *Id.* Plaintiff listed the following jobs in his job history: line worker, chicken business

(2011, 2014); molder, molding/casting business (2012-2014); and shipping and receiving, meat

business (2014, June 2018-Feb. 1, 2020). Tr. 245.

     In a Disability Report-Appeal dated September 30, 2020, Plaintiff reported a change in his

medical condition that occurred in August 2020 described as "[l]eft knee pain is worse. Swelling

in left leg is worse. Depression is worse. Insomnia is worse." Tr. 258. Plaintiff indicated changes

in his daily activities due to his conditions and noted: "I am limited to any kind of work or activity

because of the reconstructive surgery on left knee that causes pain and swelling in leg and foot. I cannot even enjoy playing with my stepson and grandchildren due to my conditions." Tr. 260. In a subsequent Disability Report-Appeal dated July 28, 2021, Plaintiff indicated a change in his medical condition that occurred in June 2021 which he described as "[l]eft knee pain is worse. Depression is worse." Tr. 234.

C.    Administrative Proceedings

Plaintiff appeared with counsel for his administrative hearing on December 2, 2021, in Greenville, SC before ALJ Petri. Tr. 29. VE Cornelius also appeared and testified. *Id.* The hearing was conducted telephonically without objection due to the Covid pandemic. Tr. 32.

1.    Plaintiff's Testimony

In response to questions from the ALJ Plaintiff testified that he completed the 11th grade but did not obtain his GED, and he is 5'11" tall and weighs 240 pounds. Tr. 34-35. Plaintiff stated that his weight is not stable and could fluctuate ten pounds because sometimes he is depressed and does not eat. Tr. 35. Plaintiff testified that he is right-handed, has been separated for 15 years, and lives with his girlfriend and 12-year-old son who receives disability for ADHD. *Id.* Plaintiff confirmed that he has not received any type of benefits in the past. Tr. 35-36. Plaintiff testified that he has never had a driver's license and he "can catch a ride" with his family members or girlfriend. *Id.* Plaintiff testified that he last worked in 2019. He stated that he was suspended from the job, and he was in the process of starting another job when the pandemic began, but he was shot the day before he was supposed to start work. *Id.* Plaintiff testified that he was suspended from work because a "guy tried hitting me with a machine at work, and they couldn't get to the bottom, no cameras, so they suspended both of us." Tr. 37. The ALJ noted that in 2013 to 2014 Plaintiff worked at Crown Casting, Inc. *Id.* Plaintiff testified that the company made casting and bowls for

soda and beer companies for their bottles and cans. *Id.* Plaintiff stated that the heaviest thing he had to lift was a casting that weighed about 20 pounds. He stated that he "set the machine up, and it weighed it down with the sand, and then they pour the metal inside it, and it come out on the other side of a line." *Id.* Plaintiff confirmed that Park Plaza Executive Services, Inc. was the staffing agency that got him hired at Crown Casting. Tr. 37-38.

Plaintiff testified that he is unable to work because he has trouble balancing and the pressure on his knee causes it "to give out periodically, and then it's constant swelling." Tr. 38. Plaintiff testified that he is in constant pain and none of the medications he takes—Gabapentin followed up with Tylenol and Aleve—stop the pain. *Id.* Plaintiff stated that he has a cane and uses it every day, and he also has a leg brace that his orthopedist, Dr. Powell, told him to use. Tr. 38-39. Plaintiff testified that because he does not have insurance, he has not been back to see Dr. Powell and he is trying to use free clinics. Tr. 39.

In response to questions from his counsel Plaintiff testified that the pain in his left leg is from his knee down to his ankle. Tr. 39. He stated that his leg goes "in and out" on average a couple of times a month. Tr. 39-40. Plaintiff stated that he holds the cane in his right hand. Tr. 40. Plaintiff described the pain in his leg as a constant throbbing pain. *Id.* He stated that he wears the leg brace daily and it covers his leg from the top of his knee to right above his ankle. *Id.* Plaintiff testified that he elevates his leg above his waist daily for about 25% of the day. *Id.* He stated that he has constant swelling in the area under his knee "and then a square all the way down to the bottom where—from where they did the surgery and—and put those rods in place." Tr. 41. Plaintiff clarified that the swelling went down to his ankle. *Id.*

Plaintiff testified that he is taking Prozac for depression that is prescribed by his primary care doctor, Dr. Sease. Tr. 41. Plaintiff stated that in addition to problems with his appetite, other

symptoms of his depression include "[s]leep, crying . . . [and] thoughts of suicide." *Id.* Plaintiff confirmed that he has not attempted suicide since the gunshot injury. Tr. 42. Plaintiff stated that he sometimes cries daily, but he may have "good weeks" when he will cry two or three times a week. *Id.* Plaintiff testified that he sometimes has headaches from taking the Gabapentin and Prozac. *Id.* Plaintiff testified that he could sit in a chair without having his leg elevated for two to three hours. Tr. 42-43. He stated that he could stand for 20 minutes at a time as long as he had his cane to take the pressure off his left leg, and he could walk with his cane for 50 to 100 feet before needing to stop and rest. Tr. 43. Plaintiff testified that he does not do any household chores or cooking and his girlfriend does that. *Id.* Plaintiff stated that during the day he helps his son with his homework and he props his leg up "trying to fight pain." *Id.*

### 2. VE's Testimony

The VE identified Plaintiff's past work as a molder, Dictionary of Occupational Titles ("DOT") number 556.685-022, light, unskilled, SVP of 2. Tr. 44. For her first hypothetical the ALJ asked VE Cornelius to assume a hypothetical individual of Plaintiff's age, education, and past work as described, limited to sedentary work "except this hypothetical individual could never push or pull with his left lower extremity; he could never climb; he could occasionally balance, stoop, kneel, crouch or crawl; he could have no exposure to workplace hazards, that—and workplace hazards means the use of moving machinery and exposure to unprotected heights." Tr. 45. The VE confirmed that would exclude past work, but she indicated there would be other jobs available. The VE provided the following examples: addresser, DOT number 209.587-010, sedentary, unskilled, SVP of 2, approximately 105,000 in the national economy; telephone quotation clerk, DOT number 237.367-046, sedentary, unskilled, SVP of 2, approximately 89,000 in the national

economy; and document preparer, DOT number 249.587-018, sedentary, unskilled, SVP of 2, approximately 93,000 in the national economy. *Id.*

For her second hypothetical the ALJ added to the first hypothetical the "limitation that this hypothetical individual would be off-task 15% or more of a workday in addition to regularly scheduled breaks." Tr. 45. The VE testified there would not be any jobs and based on her profession, education training, relationship with employers, 15% or greater is considered excessive and would preclude all competitive employment. Tr. 45-46. The VE confirmed her testimony was consistent with the DOT and companion publications and in areas where the DOT is not as detailed, such as left versus right extremities, she filled in the gaps with her professional experience. Tr. 46.

Plaintiff's counsel asked if there would be any jobs if the individual would be absent two days per month. Tr. 46. The VE replied that "based on professional education and training, relationship with employers, if an individual was absent zero to two days per month [that] is considered acceptable; greater than two days per month is considered excessive and will preclude competitive employment, as well as if a[n] individual is beginning to develop a pattern of absences of coming in late, leaving early, no call, no show, would also preclude competitive employment." Tr. 46-47. In response to counsel, the VE reaffirmed that two days per month would be allowed. Tr. 47. The VE testified that if an individual "needs to elevate their leg above seven—six to nine inches on an ongoing period, that would preclude competitive employment." *Id.*

Counsel asked the VE if her response to the first hypothetical would change if, in addition to the limitations in the first hypothetical, "the individual would require the use of a cane in their dominant right hand such that they would not be able to carry or handle anything with any standing/walking requirements of the job[.]" Tr. 47. The VE responded that "[i]f the individual

needs a cane to walk, whereas during the process of the work they're unable to complete job tasks which make them off-task, then that, too, would preclude competitive employment." Tr. 47-48.

In closing, counsel asked the ALJ to consider awarding benefits for a period of time to allow Plaintiff to get the proper medical treatment so that he could possibly return to work. Tr. 48.

With nothing further the hearing concluded. Tr. 48-49.

II.     Discussion

    A.     The ALJ's Findings

In her December 30, 2021 decision, the ALJ made the following findings of fact and conclusions of law:

> 1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.
>
> 2.     The claimant has not engaged in substantial gainful activity since May 3, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.     The claimant has the following severe impairments: status post gunshot wound and left tibia fracture, and obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he can never push or pull with his left lower extremity; he can never climb; he can occasionally balance, stoop, kneel, crouch, and crawl; and he can tolerate no exposure to workplace hazards, defined as moving machinery and unprotected heights.
>
> 6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on December 8, 1975 and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8.    The claimant has a limited education (20 CFR 404.1563 and 416.963).

9.    Transferability of jobs skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from May 3, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 17, 19, 22-23.

   B.    Legal Framework

      1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five

8

sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing past relevant work ("PRW"); and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he/she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish the inability to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . . ." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650,

653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

III.    Analysis

Plaintiff argues that (1) the ALJ erred in her assessment of the opinion of a treating physician, and (2) the ALJ did not comply with SSR 16-3p in evaluating Plaintiff's subjective complaints of pain. Pl.'s Br. 1, ECF No. 13. The Commissioner argues that substantial evidence supports the ALJ's consideration of Dr. Powell's opinion and Plaintiff's left leg pain. Def.'s Br. 10, 15; ECF No. 14.

A.  Evaluation of Opinion Evidence

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or give special deference to treating source opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical

finding(s), including those from [a claimant's] medical sources").[3] Instead, ALJs consider medical opinions using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) other factors, such as the medical source's familiarity with the other evidence in the claim or understanding of the disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The first two factors, supportability and consistency, are the most important in determining the persuasiveness of a medical source's opinion, and the ALJ is not required to explain the consideration of the other three factors. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The new regulations further deem certain evidence "inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c), 416.920b(c). This includes statements on issues reserved to the Commissioner such as whether a claimant is disabled, is unable to work, or is incapable of doing past relevant work. 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3).

Here, the ALJ considered the opinions of two State agency consultants—Drs. Corlette and Crosby—and one examining physician—Dr. Powell. Tr. 21-22. Plaintiff asserts that the ALJ erred in her assessment of Dr. Powell's June 30, 2021 opinion. Pl.'s Br. 5.

1. Douglas Powell, M.D.

On June 30, 2021, Dr. Powell completed a Physician Questionnaire regarding Plaintiff's impairments. Tr. 583-86. He indicated that he had been in contact with Plaintiff from May 4, 2020

---

[3] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).

through March 22, 2021. Tr. 583. Dr. Powell indicated that Plaintiff's prognosis was good from the fracture to his left tibia from a gunshot wound, and his symptoms included "discomfort [left] leg." *Id.* Dr. Powell indicated Plaintiff's impairments lasted, or could be expected to last, at least twelve months; no emotional factors contributed to the severity of his symptoms or functional limitations; and the impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation. *Id.*

Dr. Powell indicated that during a typical workday Plaintiff's pain would be severe enough to *occasionally* interfere with attention and concentration needed to perform simple work tasks—as opposed to never, rarely, frequently, or constantly. Tr. 584. He indicated Plaintiff would be capable of low stress jobs, could walk one city block without rest or severe pain, could sit for more than two hours at one time, stand for more than two hours at one time, stand/walk about two hours in an eight-hour day with normal breaks, and sit for at least six hours in an eight-hour day with normal breaks. *Id.* Dr. Powell indicated that during an eight-hour working day Plaintiff would need to walk every hour for about ten minutes. *Id.* He indicated that Plaintiff would not need a job that permitted shifting positions at will, and he would not need to take unscheduled breaks during the day, but with prolonged sitting he would need to elevate his leg to waist level. Tr. 585. Dr. Powell did not indicate what percentage of time during an eight-hour day that Plaintiff would need to elevate his leg. *Id.* He indicated Plaintiff would not need to use a cane or other assistive device while engaging in occasional standing/walking; Plaintiff could occasionally lift and carry 20 pounds, but never lift and carry 50 pounds; he could frequently look down, turn his head right or left, look up, and hold his head in a static position; he could never twist, stoop, crouch/squat, and could rarely climb ladders and stairs. *Id.* Dr. Powell indicated Plaintiff did not have significant

limitations with reaching, handling or fingering, and on average Plaintiff would likely miss about two days per month as a result of his impairment or treatment. Tr. 586.

2. The ALJ's Consideration of Dr. Powell's Opinion

The ALJ considered Dr. Powell's June 2021 opinion and made the following observation:

> Discomfort, per Dr. Powell and as reflected in his treatment notes, does not support the opinion that the claimant will require two absences every month, nor that he needs to keep his leg elevated. No treating source has suggested that the claimant needs to keep his leg elevated since his initial recovery from surgery, and examinations have not reflected any recent swelling in the leg (Exhibit 6F/26, 32). Dr. Powell's opinions are partially persuasive: insofar as he suggests the claimant is capable of performing sedentary work, the undersigned is persuaded that he can perform these requirements. However, Dr. Powell's opinions treatment notes and the ongoing medical record are not consistent with the need for frequent absences or the need to elevate the leg. These portions of the opinion are speculative[.]

Tr. 22.

3. Discussion

Here, the ALJ explicitly applied the appropriate regulatory framework noting that she "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." Tr. 19. Moreover, as noted by the ALJ, an adjudicator is not bound to "defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding or medical opinion, including those from the claimant's own medical sources." Tr. 21. When discussing the finding about the persuasiveness of an opinion, the ALJ need only explain how she considered "the most important factors" of supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). After discussing Dr. Powell's treatment records related to Plaintiff, Tr. 20, the ALJ found his opinions "partially persuasive," Tr. 22. The ALJ found the portion of the opinion stating Plaintiff was capable of performing sedentary work to be persuasive, but the ALJ found the portion of the opinion regarding

the need for frequent absences and the need to elevate the leg to be speculative because they were inconsistent with Dr. Powell's treatment notes and the ongoing medical record. Tr. 22.

The responsibility for weighing evidence falls on the Commissioner, not the reviewing court. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In undertaking review of the ALJ's treatment of a claimant's medical sources, the court focuses its review on whether the ALJ's decision is supported by substantial evidence.

a.   Opinion Regarding Elevation of Leg

Plaintiff argues that the ALJ's findings are insufficient because the ALJ did not discuss evidence he alleges supports the need to elevate his leg. Pl.'s Br. 7. The Commissioner contends there "was more than substantial evidence to support the ALJ's finding that Dr. Powell's conclusion regarding leg elevation was not consistent with the evidence in the record (Tr. 22)." Def.'s Br. 12.

Plaintiff cites to an October 30, 2020 progress note telling Plaintiff to "elevate and ice his leg." Pl.'s Br. 7 (citing Tr. 487). This progress note indicates that on October 29, 2020, Plaintiff called Dr. Powell's office and stated he was "having a lot of pain in his leg near his [gunshot wound]. He stated it is swelling more." Tr. 488. The next day Plaintiff was sent out for a DVT scan that came back negative. Tr. 487. The progress note does not definitively state that Plaintiff was told by the nurse to elevate his leg or if Plaintiff indicated that is what he intended to do. The note states: "DVT scan Negative for acute or ned.[4] Chronic **findings**. Will ice and elevate. Will make appt for next week to see us[.]" Tr. 487 (emphasis in original). In a subsequent progress note dated November 20, 2020, Plaintiff was seen by Dr. Powell for his six-month follow up evaluation

---

[4] NED is medical terminology for "no evidence of disease." It is not clear if that is the intended use in this progress note.

after surgery and there was no indication of swelling. The musculoskeletal exam indicated: "Patient's left knee motion is good with full extension and greater than 100 degrees of flexion. Tenderness minimal about the proximal tibia." Tr. 486.

Plaintiff also cites to a July 22, 2020 progress note from Greenwood Pain Management which indicated minor swelling to the left lower leg. *Id.* (citing Tr. 470-71). In this progress note Plaintiff complained of left leg pain. The orthopedic exam indicated: "ROM [range of motion] of left knee and ankle is limited due to stiffness. Pain from distal knee to foot. Pain on palpation of anterior lower leg and tibia[.] Minor swelling noted to left lower leg, no heat or erythema noted." Tr. 471. The note does not indicate Plaintiff was told to elevate his leg. Instead Plaintiff was counseled about analgesics and counseled to perform stretching exercises including yoga and, if possible, physical therapy. Tr. 471. Plaintiff was also instructed to follow up for nerve blocks of the left leg. *Id.* Plaintiff was unable to have the nerve block because he was on Eliquis as a prophylaxis for DVT, and he could not do narcotics because his urine tested positive for cocaine. Tr. 469-70.

Plaintiff further cited to two notations where he complained of swelling in his left leg. Pl.'s Br. 7 (citing Tr. 310, 487). The first complaint of swelling was on May 30, 2020—about three weeks after his surgery on May 5, 2020. Tr. 310. Plaintiff called Greenville Memorial Hospital and spoke with a registered nurse who noted that Plaintiff was concerned about swelling above the knee area down to his toes. *Id.* Plaintiff indicated that his leg did "not look right" and he had increased pain that was not controlled with pain medications. Plaintiff indicated he noticed the symptoms the day before. *Id.* Plaintiff was seen by Dr. Powell on June 1, 2020. Tr. 309-310. Dr. Powell indicated that Plaintiff had "expected pain, no other complaints or evidence of other injury." Tr. 309. Dr. Powell did not note any swelling, and as part of his assessment he instructed

Plaintiff to "continue full weightbearing in rehab brace locked in extension[.]" Tr. 310. The second referenced complaint of swelling was the same one cited previously from October 29, 2020 where Plaintiff called Dr. Powell's office to say that he was "having a lot of swelling would like a call back." Tr. 487.

The ALJ acknowledged Plaintiff's hearing testimony and responses to an August 31, 2020 Mobility Questionnaire where "[h]e described constant pain and swelling from his left knee to the foot that prevents him from being able to balance, stand, or walk well (Hearing Testimony and Exhibit 4E)." Tr. 20. However, in her consideration of Dr. Powell's opinion, she stated that since Plaintiff's initial recovery from surgery no examinations reflected any recent swelling in the leg, and no treating source suggested he needed to keep his leg elevated. Tr. 22 (citing Ex. 6F/26, 32 found at Tr. 520, 526). The first exhibit cited by the ALJ is from a March 26, 2021 encounter at Self Regional Hospital Emergency Department where Plaintiff reported chest pain. Tr. 519. Plaintiff denied syncopal episodes, dizziness, and denied any leg swelling. Tr. 519-20. Review of systems and physical examination did not indicate any musculoskeletal issues and findings indicated no abnormal muscle tone. Tr. 520-21. The second exhibit is from a February 4, 2021 report from Self Regional Hospital Emergency Room where Plaintiff reported increased pain in his left knee after his knee gave out while he was walking in his yard. Tr. 524-25. The physical exam indicated Plaintiff had normal range of motion in his left knee with "no swelling, no effusion, no ecchymosis, no deformity, no laceration, no erythema, normal alignment and no LCL laxity. Tenderness found." Tr. 526. This evidence cited by the ALJ supports her consideration of this portion of Dr. Powell's opinion as these examinations occurred closer in time to Dr. Powell's opinion.

Plaintiff also argues that "the ALJ does not explain why Dr. Powell's opinion about sedentary work was not speculative while his opinion about leg elevation and absences was." Pl.'s Br. 8. The ALJ stated that "insofar as [Dr. Powell] suggests the claimant is capable of performing sedentary work, the undersigned is persuaded he can perform these requirements." Tr. 22. Before discussing Dr. Powell's opinion the ALJ discussed Plaintiff's impairments in making her residual functional capacity ("RFC") assessment. The ALJ noted that although use of a cane was "not entirely supported by the record" she considered it in limiting Plaintiff to sedentary work. Tr. 20-21. The ALJ also discussed the opinions of the State agency consultants who limited Plaintiff to medium or light work. Tr. 21. The ALJ determined:

> Specifically, the context provided by the claimant's testimony as to his abilities and activities of daily living, insofar as it is not inconsistent with the medical record, supports a limitation to sedentary work. The claimant has experienced ongoing pain to the knee and has encountered financial obstacles to treatment (Hearing Testimony and Exhibit 6F/10-11). The undersigned therefore finds a limitation to sedentary work to be appropriate, although the record does not establish disabling limitations.

*Id.* Concluding her RFC discussion, the ALJ noted that Plaintiff's "knee pain, exacerbated by his obesity, limits him to sedentary work" including other exertional and environmental limitations. Tr. 22. Based on the court's reading of the entire decision, it appears the ALJ found Plaintiff capable of sedentary work, and she found portions of Dr Powell's opinion that concurred with that finding to be persuasive. What the ALJ found to be speculative was the need for frequent absences and the need to for Plaintiff to elevate his leg because those limitations were inconsistent with Dr. Powell's treatment notes and the medical record. As there is evidence in the record to support the ALJ's findings, the court finds the ALJ adequately addressed this portion of Dr. Powell's opinion.

### b.  Opinion Regarding Need to Walk for Ten Minutes

Plaintiff argues the ALJ did not explain why she did not incorporate some of the limitations opined by Dr. Powell in her residual functional capacity assessment. Pl.'s Br. 8. He asserts that "[s]pecifically, the ALJ did not include a limitation to walking for about ten minutes every hour or account for [Plaintiff's] time off task." *Id.* Plaintiff asserts that because the ALJ did not pose hypothetical questions to the VE based on all the relevant evidence "it reduces the evidentiary value of the vocational testimony." *Id.* at 10. Plaintiff contends that an individual could not perform the jobs identified by the VE while walking. *Id.* Plaintiff also contends that based on Dr. Powell's limitations the individual would be off task in an amount exceeding allowable tolerances as testified to by the VE. *Id.* at 11. The Commissioner argues that the ALJ was not required to accept answers given by a VE that contain limitations not adopted by the ALJ. Def.'s Br. 14-15 (citing cases in support). On reply Plaintiff contends this was not his argument and instead he had "argued that the ALJ improperly rejected limitations opined by Dr. Powell and that these limitations would justify a finding of disability." Pl.'s Reply 3, ECF No. 15.

In the Physician Questionnaire Dr. Powell opined that, during an eight-hour workday, Plaintiff would need to walk around for ten minutes every hour. Tr. 584. The ALJ noted this limitation in her discussion of Dr. Powell's opinion but did not say whether she found it persuasive. The Commissioner argues that the ALJ was not obligated to refer to every piece of evidence in the record, or to incorporate into her RFC every finding made by a medical source. Def.'s Br. 13-14. Here, the ALJ found Plaintiff could perform the exertional demands of sedentary work, except that he could never push/pull with his left lower extremity; never climb; only occasionally balance, stoop, kneel, crouch, and crawl; and could tolerate no exposure to workplace hazards. Tr. 19. However, despite Dr. Powell's opinion that Plaintiff would need to walk around for ten minutes every hour, the ALJ did not incorporate any off-task time into her RFC assessment. While the ALJ

is not required to adopt this limitation, she did not discuss any contradictory evidence or explain her analysis as required by the regulations. The court cannot speculate as to the ALJ's treatment of this evidence. "Resolving conflicting evidence with reasonable explanation is an exercise that falls within the ALJ's responsibility and is outside the court's scope of review." *Williams v. Saul*, No. 4:19-CV-03029-TER, 2021 WL 733391, at *6–7 (D.S.C. Feb. 24, 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 637-40 (4th Cir. 2015)). Accordingly, the ALJ's "analysis is incomplete and precludes meaningful review." *Monroe v. Colvin*, 826 F.3d 176, 191 (4th Cir. 2016). This error is not harmless because, as Plaintiff argues, if this limitation is valid then he would be above the allowable threshold for being off task and, as testified to by the VE, he would not be able to sustain competitive employment. The court is constrained to remand this case so that the ALJ may analyze Dr. Powell's opinion on this matter.

B.  Remaining Allegations

Plaintiff asserts that the ALJ erred in her consideration of his subjective statements regarding pain. Although this matter is being remanded for consideration of a portion of Dr. Powell's opinion, the Commissioner is to further consider the remaining allegation of error raised by Plaintiff concerning the evaluation of his left leg pain on his ability to work.

IV.  Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine if the Commissioner's entire decision is supported by substantial evidence. The court hereby reverses the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and remands the matter to the Commissioner for further proceedings consistent with this Order.

IT IS SO ORDERED.

February 24, 2023                          Kaymani D. West
Florence, South Carolina                   United States Magistrate Judge